CERTIFIED COPY

A True Copy

Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3172

CE DESIGN, LIMITED, an Illinois corporation,
individually and as the representative of a
class of similarly situated persons,

*Plaintiff-Appellant*,

*v.*

PRISM BUSINESS MEDIA, INCORPORATED,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:07-cv-05838—**Rebecca R. Pallmeyer,** *Judge.*

ARGUED JANUARY 20, 2010—DECIDED MAY 27, 2010

Before FLAUM, KANNE, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* This is a junk fax case, and like
most such cases, the facts are not especially juicy. In 2004
Prism Business Media, Inc., sent CE Design, Limited, a

fax advertising a trade show.[1] That's it. But that small act sparked a lawsuit that presents some interesting jurisdictional and regulatory questions. CE Design sued Prism under the Telephone Consumer Protection Act (TCPA), which prohibits the use of fax machines to send unsolicited advertisements. *See* 47 U.S.C. § 227(b)(1)(C). Prism sought summary judgment on the ground that it shared with CE Design an "established business relationship" (EBR)—a status which, Prism argued, provided a complete defense under the Federal Communications Commission's (FCC) orders implementing the TCPA. In response, CE Design asked the district court to ignore the FCC orders because, according to it, Congress did not authorize the FCC to establish an EBR defense. Because CE Design's request sounded a lot like one "to enjoin, set aside, suspend (in whole or in part), or to determine the validity" of a final FCC order—tasks which the Administrative Orders Review Act places within the exclusive jurisdiction of the courts of appeals, *see* 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a)—the district court concluded that it lacked jurisdiction to consider the validity of the EBR defense. After determining that the relationship between Prism and CE Design met the FCC's definition of an EBR, the court granted Prism's motion for summary judgment. CE Design appeals.

---

[1] Before this suit was filed, Prism Business Media, Inc., changed its name to Penton Business Media, Inc., but the parties and the district court have referred to the defendant as Prism throughout this litigation. For consistency's sake, we will do the same.

No. 09-3172                                                                3

The few facts in this case are undisputed. Prism describes itself as a "business-to-business media company" that publishes trade magazines and sponsors industry-specific trade shows. CE Design, a civil engineering and design firm, is among the more than five million sub-scribers to Prism's publications. Between 1998 and 2008 CE Design subscribed to three of Prism's publications. For each subscription, CE Design's president and sole shareholder, John Pezl, filled out Prism's subscription card. On at least two of the subscription cards, Pezl provided CE Design's fax number among the required contact information.

On August 23, 2004, Prism sent CE Design the fax that set this lawsuit in motion. Prism sent the fax to Pezl's attention at the fax number he provided in his subscrip-tion requests. The fax advertised an upcoming trade show. It included a notice inviting Pezl to write "remove" on the face of the advertisement and fax it back to a toll-free number if he believed he received the fax in error or if he wished to unsubscribe. Instead of accepting that invitation, CE Design filed this putative class-action lawsuit.[2]

In its complaint, CE Design alleged that Prism violated the TCPA provision prohibiting the use of "any telephone facsimile machine . . . to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C.

---

[2] We think it's worth noting that CE Design is no stranger to junk fax litigation; it has filed more than 100 similar suits under the TCPA.

§ 227(b)(1)(C). In 2005—after Prism sent the fax but before CE Design filed this suit—Congress passed the Junk Fax Protection Act (JFPA), which amended the TCPA to exempt from the ban on unsolicited fax advertisements any faxes sent "from a sender with an established business relationship with the recipient." 47 U.S.C. § 227(b)(1)(C)(i). But the pre-JFPA version of the TCPA applies in this case, and the EBR exemption does not appear in that version of the statute. Instead, before 2005 the EBR exemption appeared only in FCC reports and orders implementing the TCPA. *See, e.g., In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* (1992 Report and Order), 7 F.C.C.R. 8752, 8779 n.87 (Oct. 16, 1992). Specifically, the FCC's 1992 Report and Order states that "facsimile transmission from persons or entities who have an established business relation-ship with the recipient can be deemed to be invited or permitted by the recipient." *Id.*

In its summary judgment motion, Prism argued that the FCC's 1992 Report and Order provides a complete defense to CE Design's TCPA claim. Prism argued that CE Design's status as a subscriber to Prism's publications meant that they had an EBR at the time Prism faxed the advertisement, and accordingly, the fax it sent CE Design should be deemed invited. In response, CE Design argued that the district court should ignore the 1992 Report and Order, as well as subsequent FCC orders demonstrating that before Congress passed the JFPA, the FCC considered the EBR exemption to apply to faxed advertisements. *See, e.g., In Re Rules & Regulations Imple-menting the Tel. Consumer Prot. Act of 1991*, 10 F.C.C.R.

12391, 12408 (Aug. 7, 1995); *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* (2003 Report & Order), 18 F.C.C.R. 14014, 14127 (July 3, 2003). CE Design argued that the FCC was not authorized to interpret the TCPA to include an EBR exemption, and that even if it were, the FCC's interpretation is unreasonable.

In its thorough and thoughtful opinion granting Prism summary judgment, the district court concluded that it lacked jurisdiction to consider CE Design's argument that the FCC was not authorized to establish an EBR defense. Specifically, it noted that the Administrative Orders Review Act, better known as the Hobbs Act, reserves to the courts of appeals the power "to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" all final FCC orders, *see* 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a), and that before seeking relief from an appellate court, a party aggrieved by the FCC's final order must petition the FCC for reconsideration, *see* 47 U.S.C. § 405(a). The district court observed that CE Design's characterization of the EBR exemption as "unauthorized" amounted to an indirect challenge to the FCC's rule, and accordingly, it concluded that it lacked jurisdiction to consider the validity of the EBR exemption. Instead, the district court considered only whether the EBR exemption applies to the facts of this case.[3] After

---

[3] Although the Hobbs Act prevents the district court from considering the validity of final FCC orders, the court retains jurisdiction to determine whether the parties' actions violate
(continued...)

carefully considering the FCC's EBR definition, the district court determined that at the time Prism faxed CE Design its advertisement, the parties had an EBR. Accordingly, the fax was deemed to have been invited, and Prism was entitled to summary judgment on CE Design's TCPA claim.

We review the district court's grant of summary judgment de novo. *See Covell v. Menkis*, 595 F.3d 673, 675 (7th Cir. 2010). CE Design presses two main arguments on appeal: first, that the district court's jurisdictional analysis is erroneous because, according to CE Design, the court had no need to consider the EBR exemption at all; and second, that even if the EBR exemption applies, an EBR exists only where the recipient is a residential subscriber. Because CE Design characterizes itself as a business subscriber, it argues that its relationship with Prism does not qualify as an EBR.

In challenging the district court's jurisdictional analysis, CE Design argues that under the familiar analytical framework established in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), there was no need for the court to consider the FCC's rules or the Hobbs Act's jurisdictional bar in evaluating its TCPA claim. The familiar *Chevron* framework is a tool for judicial review of "an agency's construction of the

---

[3] (...continued)

FCC rules. *See, e.g., U.S. West Commc'n's, Inc. v. Jennings*, 304 F.3d 950, 958 & n.2 (9th Cir. 2002); *GTE S., Inc. v. Morrison*, 199 F.3d 733, 742-43, 746-67 (4th Cir. 1999).

statute which it administers." *Chevron*, 467 U.S. at 842; *see also FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000). In applying the *Chevron* framework, the court first asks whether the statute is silent or ambiguous on the question at issue, and if it is, the court will look to the agency regulations to determine whether they are based on a reasonable construction of the statute. *Chevron*, 467 U.S. at 842-43; *Castro v. Chi. Hous. Auth.*, 360 F.3d 721, 727 (7th Cir. 2004). According to CE Design, the district court needed to consider its jurisdiction to review the EBR defense only if it found the TCPA ambiguous and moved past step one of the *Chevron* analysis. Specifically, CE Design argues that the FCC-created EBR defense conflicts with the TCPA's plain language, which prohibits businesses from faxing unsolicited advertisements and defines "unsolicited advertisement" as one "which is transmitted to any person without that person's prior express invitation or permission." *See* 47 U.S.C. § 227(a)(5). CE Design asserts that the phrase "prior express invitation or permission" is unambiguous, and accordingly, it argues that under the *Chevron* framework, there was no need for the district court to even consider the agency-created EBR defense. CE Design therefore concludes that the Hobbs Act's proscription of district court review of final FCC orders should never have come into play in this case.

CE Design's argument presents something of a chicken-and-an egg question: What comes first, the Hobbs Act's jurisdictional restrictions or step one of *Chevron*? But while one can go around and around on the chicken-and-the-egg dilemma, an Article III court's obligation to

ensure its jurisdiction to resolve a controversy precedes
any analysis of the merits. *See Davis v. Fed. Election Comm'n*,
128 S. Ct. 2759, 2768 (2008); *Morales-Morales v. Ashcroft*,
384 F.3d 418, 421 (7th Cir. 2004). In arguing that the
district court can put off considering its jurisdiction
until after step one of *Chevron*, CE Design turns that
traditional approach on its head. What's more, CE
Design's suggestion that the district court can embark
on step one of the *Chevron* analysis without reviewing the
FCC's EBR defense ignores both the purpose and the
effect of the *Chevron* framework. *Chevron* is designed to
help courts determine the validity of a challenged agency
regulation by determining two things: First, whether
Congress expressly or implicitly delegated authority to the
agency to fill in any gaps in the statute that the agency
administers; and second, whether the agency's rule is
based on a reasonable construction of that statute. *Chevron*,
467 U.S. at 842-44; *see also Bellum v. PCE Constructors*,
*Inc.*, 407 F.3d 734, 738-39 (5th Cir. 2005) (noting that
*Chevron* guides a court's determination of a regulation's
validity); *Castro*, 360 F.3d at 727 (same). The purpose
of even just the first step of the *Chevron* analysis is to
determine the validity of the agency's interpretation. *See
Bankers Life & Cas. Co. v. United States*, 142 F.3d 973, 983
(7th Cir. 1998); *Square D. Co. & Subsidiaries v. C.I.R.*, 438
F.3d 739, 745 (7th Cir. 2006). If at step one the court deter-
mines that the statutory language is clear, it then decides
whether the plain meaning of the text supports or
opposes the challenged regulation. *Khan v. United States*,
548 F.3d 549, 554 (7th Cir. 2008). The effect of that
decision is to "'either strike or validate'" the regulation

interpreting the statute. *Id.* (quoting *Bankers Life*, 142 F.3d at 983). But deeming agency action valid or ineffective is precisely the sort of review that the Hobbs Act delegates to the courts of appeals in cases challenging final FCC orders.[4] 28 U.S.C. § 2342(1); *FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 (1984); *see also Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 399-400 (9th Cir. 1996) (noting that asking a district court to agree or disagree with an FCC ruling invokes the Hobbs Act's jurisdictional bar).

CE Design argues that asking a district court to "ignore" the EBR defense at step one of its *Chevron* analysis is not the same as asking the court to invalidate the rule. We just don't see the difference in this fine distinction. When Prism raised the EBR exemption as a defense to CE Design's TCPA claim, it inherently called upon the district court to enforce the FCC's rule. CE Design's request that the court "ignore" the rule is just another way of asking it *not* to enforce the rule. That CE Design's challenge to the FCC's EBR defense arises in a dispute between private parties makes no difference—the Hobbs Act's jurisdictional limitations are "equally applicable whether [a party] wants to challenge the rule directly . . . or indirectly, by suing someone who can be expected to set up the rule as a defense in the suit." *City of Peoria v. Gen. Elec. Cablevision Corp.* (*GECCO*), 690

---

[4] On appeal CE Design has not argued that the 1992 Report and Order setting forth the EBR defense is anything other than a final FCC order.

Case: 1:07-cv-05838 Document #: 0718 Filed: 05/27/10 Page: 10 of 17 PageID #:2187

F.2d 116, 120 (7th Cir. 1982); *see also United States v. Dunifer*, 219 F.3d 1004, 1006-07 (9th Cir. 2000) (noting that the Hobbs Act's jurisdictional bar applies to affirmative defenses); *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 463 (8th Cir. 2000) (holding that Hobbs Act barred district court review of challenge to validity of FCC regulations raised as defense in forfeiture action); *Cahnmann v. Sprint Corp.*, 133 F.3d 484, 487-88 (7th Cir. 1998) (noting that where issue arises in federal suit regarding validity of FCC order court "would have to interrupt the litigation and . . . compel the parties to resort to the FCC for a determination of that validity"). That is exactly the case here, where Prism pointed to the FCC's EBR exemption as a defense to CE Design's statutory claim. Because CE Design argued that the district court should ignore—or in other words, invalidate—the FCC's EBR exemption for purposes of this suit, the Hobbs Act's jurisdictional bar came into play. *See Any & All Radio Station Transmission Equip.*, 207 F.3d at 463 ("Whichever way it is done, to ask the district court to decide whether the regulations are valid violates" the Hobbs Act.); *see also Biggerstaff v. FCC*, 511 F.3d 178, 184-85 (D.C. Cir. 2007) (noting that Hobbs Act precludes challenge to EBR defense).

CE Design's attempt to show that there is a difference between asking the court to ignore a regulation at *Chevron*'s step one and asking it to set aside or invalidate a regulation cannot be squared with its repeated characterization of the FCC's decision to establish the EBR defense as being unauthorized or "ultra vires." CE Design describes the legislative history of

the EBR defense and argues that Congress rejected it intentionally and never gave the FCC the authority to resurrect it. But as the Supreme Court has made clear, a litigant can't avoid the Hobbs Act's jurisdictional bar simply by accusing an agency of acting outside its authority. *See ITT World Commc'ns, Inc.,* 466 U.S. at 468-69; *see also Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.,* 502 U.S. 32, 43-44 (1991) (same with respect to exclusive jurisdiction provision set forth in 12 U.S.C. § 1818(i)(1)). And as we have explained, *Chevron* is designed to resolve whether Congress expressly or implicitly delegated authority to an agency to interpret a statute. *See Joseph v. Holder,* 579 F.3d 827, 831 (7th Cir. 2009). If it did not, the agency action is invalid. *See Ceta v. Mukasey,* 535 F.3d 639, 642 & 643 n.7 (7th Cir. 2008) (noting that finding statute clear at *Chevron*'s step one invalidates challenged regulation). CE Design's insistence that the FCC's EBR defense is "unauthorized" merely illustrates Prism's point that their dispute turns on the validity of an FCC order. *See ITT World Commc'ns, Inc.,* 466 U.S. at 468-69; *Sw. Bell Tel. Co. v. Ark. Pub. Serv. Comm'n,* 738 F.2d 901, 906-07 (8th Cir. 1984) (vacated on other grounds) (noting that a party "cannot bypass" the Hobbs Act by characterizing agency action as "ultra vires"). But the Hobbs Act prevents the district court from reviewing the validity of FCC regulations, and we, in turn, presume them valid for purposes of this appeal. *See Jennings,* 304 F.3d at 958 n.2.[5]

---

[5] CE Design suggests in a footnote in its opening brief that we have jurisdiction under the Hobbs Act to invalidate the

(continued...)

No. 09-3172

None of the cases on which CE Design relies in challenging the district court's jurisdictional analysis demonstrate that a district court may proceed through step one of the *Chevron* analysis without rubbing up against the Hobbs Act's jurisdictional bar. Some of the cases to which CE Design points involve state-agency decisions or rules that are not even subject to the Hobbs Act's jurisdictional bar and therefore have nothing to say about the Hobbs Act's interplay with *Chevron*. *See, e.g., Cler v. Ill. Educ. Ass'n*, 423 F.3d 726 (7th Cir. 2005); *Ind. Bell Tel. Co. v. McCarty*, 362 F.3d 378 (7th Cir. 2004); *United States v. Dierckman*, 201 F.3d 915 (7th Cir. 2000); *Sprint Spectrum L.P. v. State Corp. Comm'n of the State of Kan.*, 149 F.3d 1058 (10th Cir. 1998). Others involve disputes over the application—rather than the validity—of FCC rules. *See, e.g., In re Airadigm Commc'ns, Inc.*, 519 F.3d 640 (7th Cir. 2008); *Fedor v. Cingular Wireless Corp.*, 355 F.3d 1069 (7th Cir. 2004). Still others clearly state that no FCC decision governed the matter. *See, e.g.,Verizon New Eng., Inc. v. Me. Pub. Util. Comm'n*, 509 F.3d 1, 11 (1st Cir. 2007); *TCG N.Y., Inc. v. City of White Plains*, 305 F.3d 67, 76 (2d Cir. 2002).

The few remaining cases to which CE Design points do not even mention the Hobbs Act's jurisdictional bar, let

---

⁵ (...continued)

FCC's EBR exemption. But of course, CE Design "cannot use an appeal from a district court to circumvent the Hobbs Act's requirement that a challenge to an FCC order is subject only to *direct* review in a court of appeals." *See GTE S., Inc.*, 199 F.3d at 743.

alone describe its interplay with *Chevron*. CE Design
points with particular urgency to *Global Crossing Tele-
communications, Inc. v. Metrophones Telecommunications*,
550 U.S. 45 (2007), and *Core Communications, Inc. v. Verizon
Pennsylvania, Inc.*, 493 F.3d 333 (3d Cir. 2007), describing
them as cases applying the *Chevron* analysis to deter-
mine the legality of FCC rules without proceeding
through the Hobbs Act's jurisdictional channels. But
those cases involved situations where the FCC attempted
to expand, *see Global Crossing*, 550 U.S. at 47-48, or limit, *see
Core Commc'ns*, 493 F.3d at 337, the jurisdiction of the
district courts. The respective courts looked to *Chevron*
only to answer threshold questions of whether the FCC
could create a cause of action, *Global Crossing*, 550 U.S.
at 53-55, or limit otherwise available routes to federal
court, *Core Commc'ns*, 493 F.3d at 339. A closer case is
*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir.
2009), which CE Design cited in its reply brief. In
*Satterfield*, the Ninth Circuit applied *Chevron* deference to
an FCC order determining that the TCPA's ban on using
automatic telephone dialing systems to call cell phone
numbers applied to text messages. *Id.* at 952-53. There, the
Ninth Circuit embarked on a *Chevron* analysis of the
FCC's order without considering the implications of the
Hobbs Act. But the Ninth Circuit's silence on the issue
does not lend persuasive support to CE Design's theory
that a district court can engage in the *Chevron* analysis
without questioning its jurisdiction to determine the
validity of the regulation in question. CE Design simply
has not cited any cases that directly support its central
thesis.

In a final effort to discredit the district court's jurisdictional analysis, CE Design warns us that the consequences of adhering to the Hobbs Act here would be "an affront to the Constitution" and would allow agency interpretation to trump congressional intent in a way that violates separation-of-powers principles. Specifically, it argues that the district court's jurisdictional analysis renders the Hobbs Act unconstitutional by preventing "the court from reading and applying the plain language" of the TCPA. But that is pure bluster (dressed up in CE Design's rather hyperbolic analogies to nuclear missiles and the Cold War). In passing the Hobbs Act, Congress vested the power of agency review of final FCC orders exclusively in the courts of appeals. 28 U.S.C. § 2342(1). The Hobbs Act's jurisdictional bar thus does not leave private parties without a mechanism for judicial review of agency action; it merely requires litigants to seek review through its specific procedural path. *See GECCO*, 690 F.2d at 120-21; *see also ITT World Commc'ns*, 466 U.S. at 468 & n.5. To allow parties to bypass that procedure would ignore Congress's "specific grant of exclusive jurisdiction in the courts of appeals for review of FCC orders." *Sw. Bell*, 738 F.2d at 906; *see also Am. Bird Conservancy v. FCC*, 545 F.3d 1190, 1194 (9th Cir. 2008) (noting that "a plaintiff may not escape an exclusive avenue of judicial review through artful pleading"). And the procedural path designed by Congress serves a number of valid goals: It promotes judicial efficiency, vests an appellate panel rather than a single district judge with the power of agency review, and allows "uniform, nationwide interpretation of the federal

No. 09-3172                                          15

statute by the centralized expert agency created by Congress" to enforce the TCPA. *Dunifer*, 219 F.3d at 1008 (quoting *N.Y. Co. v. N.Y Dep't of Labor*, 440 U.S. 519, 528 (1979)); *see also Sw. Bell*, 738 F.2d at 906-07.

Having concluded that the district court correctly determined that it lacked jurisdiction to consider whether to enforce the EBR defense in the present case, we turn to CE Design's argument that its subscriber relationship with Prism does not fall within the FCC's definition of an EBR. Specifically, it points to a subpart of the FCC's 1992 Report and Order stating that "as used in this section . . . [t]he term 'established business relationship' means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber." *See* 7 F.C.C.R. at 8792-93. Based on that definition's inclusion of the term "residential subscriber," CE Design argues that an EBR exists only where the fax recipient is a private individual or a business run from a residence. Because CE Design describes itself as a business subscriber, it concludes that "it did not have an EBR with Prism or any other broadcaster."

We agree with the district court's conclusion that CE Design's reading of the FCC's pre-JFPA definition of EBR is far too narrow. The definition on which CE Design bets its hand is located in the implementing regulations appended to the 1992 Report and Order—specifically, under the heading "Subpart L—Restrictions on Telephone Solicitation." 7 F.C.C.R. at 8790. Subpart L addresses the TCPA's limitations on automated calls to residences and

makes no mention of unsolicited faxes. In that limited
context, it makes sense that the FCC restricted the EBR
definition to residential subscribers—Subpart L is geared
toward preventing people from being bombarded at
home with annoying automated phone calls. In the
section specific to faxed advertisements, the FCC states
that unsolicited faxed ads "can be deemed to be invited
or permitted by the recipient," but does not in any way
limit the term "recipient," or otherwise indicate that the
EBR defense is limited to residential subscribers. 7 F.C.C.R.
at 8779 n.87. More importantly, the whole of the 1992
Report and Order demonstrates that the FCC did not
intend the limited reading of the EBR defense that CE
Design ascribes to it here. For example, elsewhere in the
1992 Report and Order the FCC explains that the term
"business relationship" should be construed broadly and
that an EBR is "a prior or existing relationship formed
by a voluntary two-way communication between the
caller and the called party, which relationship has not
been previously terminated by either party." *Id.* at 8771.
In describing the types of relationships that are encom-
passed by an EBR, the FCC specifically cited "publishers
with subscribers" as an example. *Id.* Accordingly, it
would be hard not to conclude that the FCC intended for
relationships like that between Prism and CE Design—a
publisher and its subscriber—to fall within the scope of
the EBR exception.

In various orders issued following the promulgation of
the 1992 rules, the FCC continued to emphasize a broad
reading of the relationships covered by the EBR defense.
In 2001 the FCC issued a public notice reminding con-

sumers about the TCPA's junk fax prohibition. In that notice, the FCC explained that the prohibition on unsolicited faxes "applies to unsolicited advertisements transmitted to both businesses and residences . . . . An established business relationship, however, demonstrates consent to receive fax advertisement transmissions." 16 F.C.C.R. 4524 (Feb. 20, 2001). In the 2003 Report and Order, the FCC explained that the EBR exemption was "sufficient to show that an individual or business has given their express permission to receive unsolicited facsimile advertisements."[6] 18 F.C.C.R. at 14127. Given the FCC's broad reading of the EBR definition, we agree with the district court that the FCC did not intend to limit the EBR exemption to only residential subscribers who receive unsolicited faxes. And because Prism and CE Design's publisher-subscriber relationship falls within the scope of business relationships the FCC intended the EBR defense to cover, we also agree that the EBR exemption applies in this case.

The judgment of the district court is AFFIRMED.

---

[6] In the 2003 Report and Order, the FCC reversed its stance and said that as of the effective date of the new rules it was implementing, an EBR would no longer provide a defense. But those rules never took effect before Congress passed the JFPA, and in the interim the FCC continued to recognize the EBR exemption.